**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| FONT DINER, INC.<br><br>      Plaintiffs,<br><br>  v.<br><br>CCA and B, LLC, doing business as The Lumistella Company and DOES 1-10,<br><br>      Defendants. | CIVIL ACTION FILE<br><br>NO. _____ |

**COMPLAINT**

Font Diner, Inc. (referred to herein as "Plaintiff or "Font Diner"), by and through its attorneys, hereby brings this complaint against defendants CCA and B, LLC, doing business as The Lumistella Company ("Lumistella"), which creates, markets, designs and/or offers for sale The Elf on the Shelf brand and/or products, and DOES 1 through 10 (together with Lumistella, "Defendants"), as follows:

**NATURE OF THE ACTION**

1.    This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States 17 U.S.C. § 101 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under: (i) 17 U.S.C. § 101 *et seq.*; (ii) 28 U.S.C. § 1331; (iii) 28 U.S.C. § 1332; and (iv) 28 U.S.C. § 1338(a).

3. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 because Plaintiff is seeking damages in excess of $75,000.00.

4. Defendants have significant contacts with the Northern District of Georgia such that they are subject to personal jurisdiction within said district because, among other things, Defendants maintain their principal place of business in the Northern District of Georgia.

5. Moreover, a substantial part of the events, omissions and/or infringement giving rise to Plaintiff's causes of action occurred in the Northern District of Georgia.

6. Therefore, pursuant to 28 U.S.C. § 1391(a) and/or 28 U.S.C. § 1400(a), venue is proper in the Northern District of Georgia.

## PARTIES

7. Plaintiff Font Diner, Inc. is a Wisconsin corporation with is principal place of business in Wisconsin. All acts and omissions of Font Diner as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

8. Defendant CCA and B, LLC—doing business as The Lumistella Company—is a Georgia Limited Liability Company with its principal place of business in Atlanta, Georgia. All acts and omissions of Lumistella as alleged herein were committed by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

9. Plaintiff is unaware of the true identity, nature, and capacity of each of the defendants herein designated as DOES 1 through 10 inclusive (hereinafter referred to as a "DOE" or the "DOES"). Plaintiff alleges, on information and belief, that each of the defendants designated herein as a DOE is in some manner responsible for the actions, damages and injuries alleged in this complaint. Upon learning the true identity, nature and capacity of a DOE, Plaintiff will amend this complaint to allege their true names and capacities. Plaintiff alleges, on information and belief, that at all material times herein, Lumistella and DOES, and each of them, were the agents of the other defendants, and the acts of each defendant were within the course and scope of their agency and/or employment.

## FACTUAL BACKGROUND

### Plaintiff, Font Diner, Creates and Protects Its Copyrights

10. Plaintiff is engaged in the business of, among other things, creating works of typographic art, electronic type face fonts and graphic design services as

well as designing, creating, manufacturing, marketing, and licensing the use of customized typeface font software.

11. Plaintiff is the designer and author of the copyrighted Grilled Cheese Type Font Software, among many others and is the owner of U.S. Copyright Registration Number TX 7-677-682, registered on May 9, 2013 (as referred to herein as the "Font Software"). A true and correct copy of Plaintiff's copyright registration in connection with the Font Software is attached hereto as **Exhibit A**.

12. Plaintiff's copyright is valid, active, current and subsisting.

13. A true and correct depiction of the typographic art or electronic type face font design embodied in the Font Software is attached hereto as **Exhibit B**.

14. Plaintiff closely controls the licensing for its copyrighted materials—including the Font Software—for commercial, for-profit uses including, amongst others, for use on goods for sale.

15. Plaintiff effectuates this control by way of an End User License Agreement ("EULA"), which can only be purchased through Font Bros, Inc.

16. After a diligent search of its records, Plaintiff was unable to locate a commercial license for the Font Software as to Lumistella.

**The Elf on the Shelf is a Big Business and International Sensation**

17. Lumistella is the operative business name of CCA and B, LLC, and creates, designs, markets and offers for sale The Elf on the Shelf brand and/or products.

18. The Elf on the Shelf is a global phenomenon that has taken the world, and its shelves, by storm. Over the course of more than 20 years, The Elf on the Shelf has established itself as a staple of holiday celebrations.

19. Lumistella refers to itself on its own website as a "global IP powerhouse behind The Elf on the Shelf and Elf Pets brands."

20. Defendants create, design, market and/or offer for sale The Elf on the Shelf toys, books and other merchandise, each year expanding its offerings by way of collaborations and new products based on its ever-growing popularity.

21. Indeed, Defendants frequently collaborate with other household names and powerhouse companies such as WK Kellogg Co, HarperCollins Publishers LLC, General Mills, Inc., At Home Group Inc., and MasterPieces to create, design, market and sell The Elf on the Shelf products.

**Defendants Infringed upon Plaintiff's Font Software**

22. On or about June 9, 2022, Defendants, but at least Lumistella, purchased the Font Software on www.fonts.com—a website owned and operated by the Monotype Imaging Organization ("Monotype")—and was provided with a

copy of Monotype's EULA, which governed Defendants' use of the Font Software, in connection therewith.

23. A true and correct copy of the Monotype EULA is attached hereto as **Exhibit C**.

24. The two-page Monotype EULA expressly permits use of the Font Software "*[o]nly for Personal or Internal Business Use.*" (***emphasis added***).

25. Despite the clear language in the Monotype EULA, Defendants proceeded to use the Font Software in seemingly any manner they pleased—namely, commercially (such as on its product packaging, labeling and/or imagery, among other things) far in excess of the clear limitations set forth in the Monotype EULA.

**Defendants Knew or Should Have Known of Its Infringement**

26. In or about October 3, 2022, Plaintiff became aware *for the first time* of Defendants' unauthorized and infringing use of the Font Software when Plaintiff received an email from At Home Group, Inc. ("At Home") requesting a price quote for a commercial license to use the Font Software in connection with products to be created, and offered for sale, in collaboration with Lumistella.

27. In its email, At Home expressly stated: "***Elf on the Shelf has asked us to this font based on their brand requirements***." (***emphasis added***) (sic)

28. Reviewing At Home's request in detail, Plaintiff discovered that Defendants were already extensively using the Font Software without a license or authorization.

29. On or about November 16, 2022, after Plaintiff provided the requested priced quote, Plaintiff received an email from At Home, stating that Lumsitella and At Home "have decided to proceed without using this font."

30. However, Plaintiff later discovered that Defendants proceeded to use of the copyrighted Font Software in collaboration with At Home on at least 11 products.

31. On or about November 18, 2022, Plaintiff contacted Defendants via an email to Lumistella in an effort to amicably resolve the infringement and provide Defendants the opportunity to purchase a commercial license for the Font Software. Plaintiff's email went unanswered.

**Defendants' Infringement of Plaintiff's Font Software is Extensive**

32. In all, ***Defendants utilized the Font Software without authorization in connection with more than 70 commercial products***.

33. Although Plaintiff believes that additional infringing products and/or uses exist, a true and correct depiction of the products currently known are attached hereto as **Exhibit D** and are listed briefly below:

   i.   At Home/The Elf on the Shelf "North Pole Sign";

ii. At Home/The Elf on the Shelf "Icon with Brown Eyes Petite Gift Bags";

iii. At Home/The Elf on the Shelf "Icon with Blue Eyes Petite Gift Bags";

iv. At Home/The Elf on the Shelf "Christmas Countdown Calendar";

v. At Home/The Elf on the Shelf & Elf Pets® "Metal Wall Décor";

vi. At Home/The Elf on the Shelf Always Nice with Blue Eyes Cookie Jar;

vii. At Home/The Elf on the Shelf Always Nice with Brown Eyes Cookie Jar;

viii. At Home/The Elf on the Shelf & Elf Pets Cork Placemat;

ix. At Home/The Elf on the Shelf Ceramic Table Top Décor;

x. At Home/The Elf on the Shelf Be Merry Coir Mat;

xi. At Home/The Elf on the Shelf Stamps Gift Wrap;

xii. The Elf on the Shelf "Scout Elf Ideas Mobile App" (available on iOS and Android);

xiii. The Elf on the Shelf "Scout Elf Ideas Mobile App" (available on iOS and Android);

xiv. The Elf on the Shelf "YouTube Channel" Videos/Posters/Titling;

xv. Spot the Official (Merry!) "Scout Elf | Did You Know? North Pole Edition" Titling;

xvi. HarperCollins "Christmas Books for Kids | The Elf on the Shelf" Titling;

xvii. "What Is The Elf on the Shelf?" Titling;

xviii. "¡Vaya a Cualquier Lugar Con Su Elfo! | Scout Elf Carrier | The Elf on the Shelf" Titling;

xix. "New Claus Couture Collection | Toys for kids | The Elf on the Shelf" Titling;

xx. The Elf on the Shelf "YouTube Shorts - Did You Know";

xxi. "What do the Elf Pets Do" Video Short Titling;

xxii. "Easy No Sew Elf on the Shelf Costume" Video Short Titling;

xxiii. "Why didn't my Scout Elf Move?" Video Short Titling;

xxiv. "Do Elf Pets help the Scout Elves?" Video Short Titling

xxv. "Reindeer News Network Videos" Titling;

xxvi. "Scout Elf Return Week" Video Titling;

xxvii. "Time to Open Your Presents" Video Titling;

xxviii. "DIY Elf on the Shelf Costume" Video Titling;

xxix.    "Fan Feature Fridays" Video Titling;

xxx.    "National Coaches Day" Video Titling;

xxxi.    "The Elf on the Shelf Videos" Instagram Titling;

xxxii.    "MasterPieces Officially Licensed Elf on The Shelf Picture Matching Card Game for Kids and Families";

xxxiii.    "MasterPieces Puzzle Set 4-Pack 100 Piece Jigsaw Puzzle for Kids - Elf on the Shelf 4-Pack";

xxxiv.    The Elf on The Shelf 48 pc Floor Puzzle "Warmest Wishes";

xxxv.    The Elf on the Shelf "Merry Guess-mas Card Game";

xxxvi.    "MasterPieces 100 Piece Christmas Jigsaw Puzzle for Kids - Friends Fur-Ever";

xxxvii.    "MasterPieces Licensed Kids Games - Elf on The Shelf - Supersized Playing Cards Games for Kids & Family, Laugh and Learn";

xxxviii.    The Elf on the Shelf Action Figure Play Pack;

xxxix.    The Elf On The Shelf Playing Cards;

xl.    "MasterPieces 60 Piece Christmas Jigsaw Puzzle for Kids - Believe in Your Elf ";

xli.    The Elf on the Shelf  Banner Advertising;

xlii.    "MasterPieces Officially Licensed - Elf on the Shelf 28 piece

Picture Dominoes for kids 3 and Up";

xliii. The Elf on the Shelf Bingo Game;

xliv. The Elf on the Shelf Checkers Board Game;

xlv. The Elf on the Shelf Scout Elves Stories Card Game;

xlvi. The Elf on the Shelf Marshmallow Pop;

xlvii. The Elf on the Shelf® Figure Surprise Set - Camping Edition;

xlviii. The Elf On The Shelf® Christmas Week Countdown Bath Bomb Advent Calendar 7-Count;

xlix. The Elf on the Shelf Mini Gingerbread House Kit;

l. The Elf on the Shelf Candy Fan with Light;

li. The Elf on the Shelf® Gingerbread House Kit;

lii. "Frankford Elf on the Shelf Pancake Mix Gift Set, Includes Buttermilk Pancake Mix";

liii. "12 Days Of The Elf On The Shelf Jigsaw Puzzles Advent Calendar";

liv. Pillsbury Funfetti The Elf on the Shelf Peppermint Vanilla Whipped Frosting, 12 oz Tub;

lv. Pillsbury The Elf On The Shelf Hot Cocoa Frosting;

lvi. Pillsbury The Elf On The Shelf Hot Cocoa Cookie;

lvii. Pillsbury The Elf On The Shelf Holiday Sugar Cookie;

11

lviii. Pillsbury The Elf On The Shelf Vanilla Swirl Cake Mix;

lix. Pillsbury The Elf On The Shelf Candy Cane Cookie;

lx. Pillsbury Funfetti The Elf on the Shelf Snickerdoodle Cookie Mix Box;

lxi. The Elf on the Shelf Marshmallow Swirl Fudge Brownie Mix Box;

lxii. Kellogg's The Elf on the Shelf Cereal Snacks, Christmas Cereal, Holiday Snacks, Variety Pack;

lxiii. Scout Elves at Play® Glide-and-Go;

lxiv. The Elf on the Shelf: Don't Touch That Elf!;

lxv. The Elf on the Shelf: Meet the Scout Elves (I Can Read Level 1);

lxvi. The Elf on the Shelf: Welcome to the North Pole (I Can Read Level 1);

lxvii. The Elf on the Shelf Present Pile Up;

lxviii. The Elf on The Shelf Festive Fun Craft Kit (32 Piece Set);

lxix. Beaches Resorts Elf on the Shelf Sweepstakes Campaign; and

lxx. Shelf 10 Flavored Lip Balm Christmas Stocking Gift Set.

**Defendants' Infringement Caused Substantial Damage to Plaintiff**

34. Defendants' unlicensed and unauthorized use—whether intentional or otherwise—of the Font Software in the manners complained of herein represent multiple ongoing infringements of Plaintiff's valid copyright in and to the Font Software.

35. The natural, probable, and foreseeable result of Defendants' wrongful conduct has deprived and continues to deprive Plaintiff of the benefits and revenue from the sale of appropriate licenses to use the Font Software in the manners complained of herein.

36. Plaintiff has lost and will continue to lose substantial revenue due to Defendants' wrongful use, copying, and distribution of its Font Software.

37. Additionally, Defendants' wrongful conduct has deprived and will continue to deprive Plaintiff of opportunities for expanding the goodwill associated with the Font Software.

38. Defendants' unlicensed and unauthorized use—whether intentional or otherwise—of the Font Software is the direct and proximate cause of the damages sustained by Plaintiff as a result of the infringement set forth herein.

39. Despite Plaintiff's attempts to resolve this dispute amicably, Defendants have maintained the unreasonable position that the limited license

provided to them in the Monotype EULA allows for, or otherwise excuses, the commercial uses set forth above. ***Defendants are incorrect***.

## FIRST CAUSE OF ACTION

### (Willful Copyright Infringement – 17 U.S.C. § 501, et seq.)

40. Plaintiff hereby incorporates by reference all foregoing paragraphs in this Complaint as if fully set forth herein.

41. Upon information and belief, Defendants have, among other things, willfully, intentionally and/or knowingly used without authorization and/or caused others to use without authorization the Font Software in connection with various The Elf on the Shelf products.

42. Each unauthorized use of Plaintiff's copyrighted Font Software constitutes an individual and distinct act of copyright infringement.

43. Defendants' unauthorized and infringing use and reproduction of the copyrighted Font Software continues to this day, and Defendants have not properly compensated Plaintiff for the use of the copyrighted Font Software or secured the requisite license in connection therewith, among other things.

44. Defendants' unauthorized and infringing use of the Font Software infringes upon Plaintiff's exclusive rights under the Copyright Act.

45. Upon information and belief, the foregoing allegations and as will be proven at trial, Defendants' wrongful conduct was intentional, willful and/or with

knowledge of the infringement and other wrongdoings alleged by Plaintiff in this action.

46. As a direct and proximate results of Defendants' wrongful conduct, Plaintiff has, among other things, been irreparably harmed, suffered damage, and/or Defendants have profited in an amount in the millions of dollars and to be determined at trial. Such harm, damages and injuries are continuing and, absent court intervention, will not abate in the future.

47. Defendants infringed on Plaintiff's copyrighted Font Software when, among other things, it used the Font Software in an unauthorized manner without proper license or consent. By virtue of this unauthorized commercial exploitation of the Font Software, Defendants have realized illicit proceeds.

48. Pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to statutory damages since the infringement occurred after the copyrighted Font Software was registered.

49. Plaintiff is entitled to recover damages it has sustained and will continue to sustain, together with any gains, profits, and advantages obtained by Defendants together with court costs, attorneys' fees and/or pre- and post-judgment interest as a result of the wrongful conduct alleged herein.

50. At the time of filing, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiff but is believed to be not less

than $10,500,000—70 known counts of infringement multiplied by $150,000 per count—plus interest, costs and attorneys' fees, according to proof.

51. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests and prays that this Court will:

1. Find that Defendants have violated the Copyright Act and that all such violations have been willful;

2. Preliminarily and permanently enjoin and restrain Defendants, its officers, directors, principals, agents, servants, employees, successors, assigns, and all those in active concert or participation with them from:

    a. imitating, copying, posting, distributing, or making unauthorized use of Plaintiff's copyright, including infringing uses of the copyright; and

    b. manufacturing, creating, producing, advertising, promoting, or displaying any product or service bearing any simulation, reproduction, counterfeit, copy, derivative version, or colorable imitation of Plaintiff's copyrighted works;

3. Direct that Defendants deliver for destruction at Defendants' expense pursuant to 17 U.S.C. § 503:

    a. All media in Defendants' possession bearing Plaintiff's registered copyright, including, but not limited to, computer files, hard drives, solid state drives, flash drives, disks, CD-ROM's, DVDs, and all other recorded media; and

    b. All other items, including, but not limited to, advertising, retail displays, electronic displays, packaging, programming for display devices showing the fonts created using Plaintiff's Font Software and other goods showing or otherwise bearing showings of the use of Plaintiff's copyrighted work, in Defendants' possession or under its control that were created through the unlawful use of Plaintiff's copyrighted works;

  4. Direct the imposition of a constructive trust for all monies or benefits received by Defendants from the sale of services and goods that use or were created using infringing copies and/or unauthorized derivative works based upon Plaintiff's copyrighted works;

  5. Direct that Defendants be required to pay Plaintiff's actual damages in the amount of $150,000 per infringement, for a total of $10,500,000, pursuant to 17 U.S.C. § 504(b), for all gains, profits, and advantages derived by Defendants through its infringement of Plaintiff's copyrights;

6. Direct that Defendants be required to pay to Plaintiff such other damages that Plaintiff has sustained as a consequence of Defendants' unauthorized use of Plaintiff's copyrighted work;

7. Direct that Defendants be ordered to make a written report within a reasonable period of time to be filed with the Court detailing the manner of compliance with the requested injunctive and mandatory relief above;

8. Award Plaintiff the costs of this action together with reasonable attorneys' fees pursuant to 17 U.S.C. § 501, 17 U.S.C. § 504 and 17 U.S.C. § 505; and

9. Award Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

DATED: September 30, 2025

By     /s/Amanda G. Hyland
Amanda G. Hyland
Austin C. Vining
**BUCHALTER, APC**
3475 Piedmont Road NE
Suite 1100
Atlanta, Georgia 30305
Phone: 404-832-7534
ahyland@buchalter.com
avining@buchalter.com

Saussee Moghoyan
*Pro Hac Vice forthcoming*
**IPLS, PLC**
466 Foothill Blvd, Suite 79
Los Angeles, California 91011
Phone: 818-445-3730
soseh@ipls.us

*Attorneys for Plaintiff Font Diner, Inc.*